**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WALTER W. TENNYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-CV-499-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Walter Tennyson seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Titles II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636 (c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 11].

Plaintiff's applications for disability insurance benefits was filed on April 24, 2006, alleging an onset date of January 30, 2006. [R. 124]. The Administrative Law Judge ("ALJ") held a hearing on October 3, 2008. [R. 64]. On January 8, 2009, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the SSA. [R. 9]. The Appeals Council denied review on May 29, 2009. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981. On July 31, 2009, plaintiff filed the subject action with this Court. [Dkt. # 1].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237

(10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

**Background**

Plaintiff was born on February 29, 1972, and was 34 years old on the alleged onset date of his disability. [R.124]. Plaintiff is 5'8" tall and weighs 221 pounds. [R. 280]. He completed the ninth grade. [R. 68]. Plaintiff has never married and he does not have children. [R. 124]. He has worked as a roofer and as a laborer at a sod farm and in the construction industry. [R.148]. Plaintiff has a history of alcohol, marijuana, and tobacco abuse. He has been arrested on three different occasions for driving under the influence of alcohol with the last arrest in May 2005. He has previously been arrested for driving without insurance and driving without a drivers licence. During the relevant period, plaintiff participated in a court imposed drug rehabilitation program and attended group therapy to assist him with abstaining from alcohol. [R. 279].

On January 30, 2006, plaintiff went to the Claremore Indian Hospital complaining of shortness of breath. [R. 274]. Radiology reports of his chest showed his heart size and pulmonary vasculature were within normal limits and lungs were clear without evidence of pneumonia, atelectasis or effusions. He was referred to Tulsa Regional Medical Center, where he was evaluated from February 1 through 3, 2006. [R. 229-242]. Radiology reports showed a normal chest, with no lesions or abnormalities. Spirometry showed a restrictive respiratory pattern although ventilation

2

and perfusion were normal. [R. 232]. He exhibited a decreased lung volume with "high diaphragms." Plaintiff's lungs were clear with no acute infiltrate. [R. 242]. The diagnosis was restrictive respiratory pattern with no disease process present secondary to an enlarged abdomen which elevated his diaphragm, tobacco abuse, and obesity. He was released with a recommendation to quit smoking and lose weight. [R. 232]. Plaintiff was prescribed an Albuterol metered dose inhaler, 4 to 8 puffs every one or two hours as needed for shortness of breath and an Advair inhaler to be used twice a day. [R. 227].

On March 16, 2006, plaintiff returned to the emergency room at Claremore Indian Hospital complaining of chest pain and shortness of breath. He requested medication. [R. 263]. Plaintiff was diagnosed with asthmatic bronchitis. Chest x-rays on that date were unchanged, showing clear lungs without evidence of pneumonia, atelectasis or effusions. [R. 271]. Plaintiff was prescribed a Triamcinolone inhaler for use four times a day, and Albuterol to be dispensed through a nebulizer, to be used "every eight hours if needed for breathing." [r. 254]. He received a 3 month supply of his prescription medications, and he was allowed two refills in one year. [R. 254, 346]. Plaintiff returned to Claremore Indian Hospital on April 20, 2006, May 17, 2006 and on June 30, 2006 complaining of neck, shoulder and back pain. [R. 339, 343]. At a June 30, 2006 appointment, he refilled his triamcinolone inhaler, and his Albuterol was reduced to two puffs a day, every six hours, with 11 refills remaining on the prescription. [R. 334]. On July 31, 2006, chest x-rays showed his lungs were clear without pneumonia, atelectasis, or effusions. [R. 406]. Plaintiff failed to appear for his medical appointment on September 27, 2006. [R. 331]. He returned to Claremore Indian Hospital on November 6, 2006. His diagnosis again was acute asthmatic bronchitis, with records showing 10 refills left on his Albuterol nebulizer. [R. 329]. On January 16, 2007, records show that

3

plaintiff's asthma was stable. [R. 328]. On January 25, 2007, records show that plaintiff's use of the nebulizer was in "active status." [R. 318].

Plaintiff alleges he is unable to work due to lung problems, back problems and alcoholism. [R. 159]. By application of the 5-step sequential evaluation, the ALJ found that plaintiff had not been employed since January 30, 2006. He determined the adjudicated period in this case is from his alleged onset date of January 30, 2006, through his date last insured, September 30, 2007. [R. 11]. The ALJ found plaintiff's severe impairments to be asthma, back pain and diabetes mellitus; and, that these impairments "have more than a minimal effect on his ability to perform work activities." [R. 11]. He found plaintiff's nonsevere impairments to be mild situational depression, history of alcoholism in remission and an abnormal ECG with no defined heart condition. He found plaintiff's impairments do not meet or equal one of the listed impairments and that he was unable to return to his past work. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work, but limitations were added to accommodate plaintiff's asthma by eliminating a work place with dust or fumes, and to accommodate plaintiff's back pain by eliminating lifting heavy objects and stooping. [R. 12]. In considering his young age, education, work experience, RFC, and after consulting a vocational expert, he found plaintiff could perform such light work as bench and electronics assembler, and that such jobs existed in sufficient numbers in the regional and national economy. [R. 19]. This finding was made at the fifth step in the five step inquiry outlined in <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age,

**Discussion**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). The term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. A claimant is determined to be disabled only if he is unable to do his previous work; and considering his age, education, and work experience, cannot perform any other kind of work in the regional or national economy. 42 U.S.C. § 423(d). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of an impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

Plaintiff raises two issue on appeal.

(1)  Whether the ALJ improperly failed to consider the effect of plaintiff's use of a nebulizer on his ability to work.

(2)  Whether the ALJ improperly failed to explain the discrepancies between his findings

---

education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

and the findings provided by the State agency medical consultants.
[Dkt. # 14 at 1].

As his first assignment of error, plaintiff contends the ALJ's decision is not supported by substantial evidence because he failed to take into consideration whether plaintiff's use of a nebulizer would preclude his ability to engage in sustained work activities. In his decision, the ALJ acknowledged plaintiff's claim that his biggest problem is breathing and requires breathing treatments four times per day which take about 20-30 minutes per treatment. [R. 13]. The ALJ discounted the credibility of plaintiff's testimony regarding the severity of the restrictions imposed on his daily activities due to shortness of breath. Plaintiff alleges the onset of his breathing problem was on January 30, 2006, when he was diagnosed at Claremore Regional Hospital with dyspnea and chest pain and transferred to Tulsa Regional Medical Center for more specialized care. [R. 14]. There, the objective medical evidence showed plaintiff's heart functioning was within normal limits but that a pulmonary test revealed a restrictive defect. Interstitial lung disease was ruled out. The ALJ noted that plaintiff was discharged with a diagnosis of decreased diaphragm movement secondary to abdominal obesity. [R. 14]. The ALJ noted on March 24, 2006, plaintiff returned to the Claremore Indian Hospital complaining of shortness of breath "after eating" and advising that Albuterol did help with breathing. [R. 14]. Plaintiff returned to Claremore Indian Hospital on November 6, 2006 with complaints of "acute asthmatic bronchitis." [R. 14]. The ALJ relied on other evidence to impeach plaintiff's credibility as to his activities of daily living:

> The claimant's statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms, and objective documentation in the file. The claimant has described daily activities which are limited to the extent

one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record, either in forms completed in connection with the application and appeal, medical records or reports, or the claimant's testimony, the claimant has reported the following activities such as caring for his own personal needs, watching television and going fishing (Exhibit 5E). The claimant also attends group therapy meetings for his drug court obligation (testimony, Exhibit 5F and 11 F).

[R. 16]. The ALJ identified additional evidence which impeaches plaintiff's credibility:

> The claimant's credibility is further eroded by the continued ability to perform some levels of work, as stated by the claimant, that he worked on odd jobs 'here and there.' Although the undersigned finds that his odd jobs have not constituted substantial gainful activity, it does show that the claimant is capable of performing some levels of work at his own discretion, which is inconsistent with his allegations of total disability. The claimant's credibility is further eroded by a history of numerous violations of the law and subsequent incarcerations. The claimant has a history of alcohol-related offenses which have resulted in further arrests for driving without a license and insurance verification, ultimately resulting in a court-ordered alcoholism treatment program to include ongoing alcoholics anonymous (AA) meetings.

[R. 17]. The ALJ found from the evidence of record, that plaintiff has only "occasional problems" with shortness of breath, that he uses an inhaler "on occasions" and has the machinery available at home for necessary breathing treatments. [R. 17].

To support his claim, plaintiff relies on Klitz v. Barnhart, 180 Fed. Appx. 808 (10th Cir. 2006) (unpublished).[2] In Klitz, the claimant was found to suffer from severe chronic obstructive lung disease, but the impairment was not severe enough to meet or equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P., Appendix 1. The ALJ found that plaintiff could perform sedentary work, but she could not work in environments where she would be exposed to

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

7

respiratory irritants such as dust. Plaintiff testified that she used a nebulizer two or three days a week and two times per day on those days. She testified that it took fifteen to twenty-five minutes to use the nebulizer. Claimant appealed the ALJ decision arguing his findings were not supported by substantial evidence because it lacked a requirement that claimant use a home nebulizer periodically during the work day. The Tenth Circuit found the ALJ's finding on this issue insuffficient and remanded the case for the ALJ to develop certain details about claimant's use of her home nebulizer. Specifically, (1) whether her nebulizer is portable such that it can be used away from the home, and (2) whether her need to use the nebulizer twice a day on those days when she must use it occurs randomly, or whether she could use it before work, during established breaks, or after work in order to treat her condition effectively. Id.

The instant case is distinguishable from Klitz in several respects. First, plaintiff failed to meet his burden to establish how frequently he was required to use a nebulizer. The medical record shows that he was to use a nebulizer two to four times a day, as needed. But the record is void of any evidence of his average use of the nebulizer, whether daily, weekly, monthly or on occasion. The records also show that plaintiff's medical follow up visits for asthma review were in three month intervals, and that his asthma was in "stable" condition. Second, the ALJ relied on objective medical evidence to show that plaintiff's asthma was a medically acute, rather than a chronic, condition; that his lungs were clear, and his shortness of breath resulted from diaphragm restrictions secondary to abdominal obesity. Third, the ALJ found and supported his findings, with reference to the record, that plaintiff's testimony as to the intensity, persistence and limiting effects of his shortness of breath was not entirely credible. Plaintiff does not challenge this finding on appeal. Fourth, the record indicates that plaintiff's use of the nebulizer may have been limited, demonstrated by the continuing

8

high level of Albuterol refills available to plaintiff, both during and at the end of calendar year 2006. Finally, the ALJ did enter a finding that plaintiff has only "occasional problems" with shortness of breath and that he uses an inhaler "on occasions" and has machinery available at home for necessary breathing treatments. Thus, the Court finds that the ALJ's decision is supported by substantial evidence. However, the Court further finds that remand would allow the ALJ to enter specific findings consistent with the opinion set forth in Klitz. Specifically, at his discretion, the ALJ may retain a medical expert, if necessary, to determine:

> (1) whether plaintiff's condition and the amount of Albuterol actually used during the relevant adjudicated period would have allowed for use of a portable nebulizer to accommodate plaintiff's work away from the home.
>
> (2) the extent it was medically necessary for plaintiff's use of the nebulizer and whether use of the nebulizer could occur prior to, during established breaks, and after work to treat his condition effectively and accommodate work away from home.
>
> (3) whether plaintiff's asthma could be controlled through use of an inhaler, rather than an nebulizer, to accommodate sustained work activities.
>
> (4) whether, even assuming plaintiff's use of the nebulizer was medically necessary as alleged by plaintiff, his use would have altered plaintiff's RFC in any event.

The Court further finds that even though this case is being remanded for further factual determinations, the Commissioner's position on appeal was substantially justified in that plaintiff failed to present sufficient evidence to meet his burden to prove his alleged disability. The findings entered by the ALJ are supported by substantial evidence. Further, the evidence of record is inadequate to sustain plaintiff's claim on appeal and tends to support the findings entered by the ALJ.

As his second assignment of error, plaintiff claims the ALJ failed to explain the purported discrepancies between his findings as to plaintiff's mental disorder and the findings provided by the

state agency medical consultants. In his decision, the ALJ determined that plaintiff's mild situational depression was a nonsevere impairments and that it did not cause more than minimal limitation in his ability to perform basic mental work activities. To support this finding, the ALJ entered his opinion as to the four broad functional areas known as the "paragraph B" criteria. He determined that plaintiff's mental disorder did not meet the paragraph B criteria within 12.00C of the listing impairments. He found that plaintiff had mild limitations in daily living, social functioning, and in concentration, persistence, and pace. He further found that plaintiff had experienced no episodes of decomposition. [R. 12]. Also in evidence is an opinion by state agency medical consultant Carolyn Goodrich, PhD regarding plaintiff's mental functional limitation based on the paragraph B criteria. Dr. Goodrich opined that plaintiff has mild limitations in daily living activities, and moderate limitations in social functioning, and in concentration, persistence and pace. She agreed that plaintiff had experienced no episodes of decomposition. [R. 301]. By the ALJ assigning "mild" limitations in the first three functional areas and a finding of "no episodes" in the fourth area, the ALJ determinated that plaintiff's mental disorder was nonsevere. See 20 CFR 404.1520a(d)(1).

As evidence to support this determination, the ALJ relied on the opinions of Minor Gordon PhD, another agency consultative psychologist. Dr. Gordon performed separate evaluations on July 24, 2006 and on April 27, 2007. Dr. Minor reported plaintiff had never been hospitalized for mental health treatment and, although he took Prozac, plaintiff did not know why he took it. [R. 15]. On July 24, 2006, Dr. Gordon diagnosed plaintiff with a mildly depressed mood, secondary to general medical condition, and a mild to moderate impairment secondary to low level of intellectual functioning, with a global assessment of functioning (GAF) score of 70. Dr. Gordon opined that plaintiff's mild depression would not preclude him from working. [R. 15]. On April 27, 2007, Dr.

10

Gordon again opined that plaintiff had mild situational depression and that he retained the GAF score of 70. He said plaintiff's social adaptive behavior was mildly impaired, secondary to low level of intellectual functioning, and confirmed that his mild depression would not preclude employment. [R. 15].

The ALJ enters his findings as to plaintiff's paragraph B criteria in order to assess the severity of plaintiff's mental disorder, rather than as support for his RFC assessment. Under Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at 4, "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step two and three of the sequential process." Although Dr. Goodrich rated plaintiff with having moderate restrictions in two of the broad categories, the ALJ rejected her assessment in favor of the opinions offered by Dr. Gordon and set forth the evidence relied upon by Dr. Gordon to support his decision. It is a proper function of the ALJ to make factual determination based on controverted facts. The Court is to uphold the ALJ's factual determinations if supported by substantial evidence. In this instance, the ALJ's findings were supported by substantial evidence. Thus, plaintiff's claim is without merit.

## Conclusion

Based on the foregoing, the Court remands this case for further administrative action pursuant to sentence four of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to modify the decision of the Commissioner consistent with this Order and Opinion. Upon remand, the Commissioner will enter additional clarifying findings, and seek additional medical evidence, if necessary. At his discretion, the ALJ may retain a medical expert, if necessary, to determine:

> (1) whether plaintiff's condition and the amount of Albuterol actually

used during the relevant adjudicated period would have allowed for use of a portable nebulizer to accommodate plaintiff's work away from the home.

(2) the extent it was medically necessary for plaintiff's use of the nebulizer and whether use of the nebulizer could occur prior to, during established breaks, and after work to treat his condition effectively and accommodate work away from home.

(3) whether plaintiff's asthma could be controlled through use of an inhaler, rather than an nebulizer, to accommodate sustained work activities.

(4) whether, even assuming plaintiff's use of the nebulizer was medically necessary as alleged by plaintiff, his use would have altered plaintiff's RFC in any event.

The Court hereby affirms all other findings entered by the ALJ.

SO ORDERED this 31st day of March, 2011.

_____
T. Lane Wilson
United States Magistrate Judge